Marsha Jane PESEK, Individually and as next friend of Kristen Leigh Pesek, Appellant,

v.

MURREL'S WELDING WORKS, INC., Appellee.

No. 15784.

Court of Civil Appeals of Texas, San Antonio.

Oct. 12, 1977.

Rehearing Denied Nov. 9, 1977.

Pat Maloney, San Antonio, for appellant.

Edward P. Fahey, Groce, Locke & Hebdon, San Antonio, for appellee.

KLINGEMAN, Justice.

This is a venue action. Eugene R. Pesek, the husband and father of plaintiffs, suffered fatal injuries while operating a hot oil truck in Frio County, Texas on January 24, 1976. Pesek was fatally burned in an explosion occurring while the hot oil unit was being used to recycle oil from a storage tank, with the oil being heated and then returned to the tank to make the oil less viscous. Plaintiffs' suit was filed in Frio County, Texas against Murrel's Welding Works, Inc., a resident of Hockley County, Texas, the designer and manufacturer of such hot oil truck, which was sold by defendant to Associate Services, Inc., Pesek's employer. Defendant filed a plea of privilege to be sued in the county of his residence. Plaintiffs timely filed their controverting affidavit contending venue was proper in Frio County, Texas under Subdivisions 9a, 23, and 31 of Art. 1995, Tex.Rev. Civ.Stat.Ann. (1964). The trial court, without a jury, sustained defendant's plea of privilege and the case was transferred to the District Court of Hockley County.

The trial court filed findings of fact which may be summarized as follows:

1. The accident occurred in Frio County, Texas.

2. At the time of the accident in question and on the date this suit was instituted, plaintiffs resided in Atascosa County, Texas.

3. The residence of defendant at all material times was Hockley County, Texas.

4. Defendant did not have an agent or representative in Frio County, Texas.

5. The hot oil truck involved was designed, manufactured, sold, and delivered by defendant in Hockley County, Texas in 1968.

6. Plaintiffs failed to prove that when the hot oil truck was originally sold in 1968 that it was defective in design, manufacture, or assembly.

7. Plaintiffs failed to prove by a preponderance of the evidence that when the hot oil truck was sold it was unreasonably dangerous.

8. Plaintiffs failed to prove that at the time of the accident the hot oil truck was in substantially the same condition as when it was sold.

9. On the date of the accident, the hot oil truck was being misused.

10. Plaintiffs failed to prove any act or omission of negligence on the part of defendant that occurred in Frio County, Texas.

11. Plaintiffs failed to prove that the causes of action alleged, or a part thereof, arose in Frio County, Texas.

12. Plaintiffs failed to prove that the hot oil truck is "consumer goods."

13. Plaintiffs did not allege in their petition a cause of action based upon a breach of warranty for a manufacturer of "consumer goods."

14. Plaintiffs failed to prove that the defendant breached any warranty of consumer goods.

15. Plaintiffs failed to prove that their cause of action, or a part thereof, accrued in Frio County, Texas.

Seven of plaintiffs' points of error attacked findings of fact of the trial court, which points of error may be summarized as follows:

The trial court erred in holding that plaintiffs failed to prove that: (1) when the hot oil truck was sold to the original owner in December 1968 it was defective in de-

sign, manufacture, and assembly; (2) when the hot oil truck was originally sold by defendant it was unreasonably dangerous; (3) at the time of the accident the hot oil truck was in substantially the same condition as it was when originally sold; (4) the causes of action alleged, or parts thereof, arose in Frio County, Texas; (5) the hot oil truck is consumer goods; (6) plaintiffs did not allege a cause of action based upon breach of warranty by a manufacturer of consumer goods; and (7) the defendant breached any warranty of consumer goods.

Plaintiffs' last point of error is that the trial court erred in concluding that the plea of privilege should be sustained.

The purpose and function of a hot oil truck is to take crude oil from a battery storage tank and pump it out of the tank and put it through some coils which have a fire under them. This treats and thins the oil and reduces the viscosity of the oil which is put back in the tank.

The only eyewitness to survive the accident, Thomas Chavez, testified that Pesek had been called out to where the hot oil unit was being operated because they were having trouble with its operation. He stated that Pesek was in the process of climbing a ladder on an oil tank to check the temperature of the oil when he saw fumes coming out of the tank; that Pesek yelled to Jim Hincher, another employee of Associate Services, to cut the fire off, and that's when the explosion occurred. Hincher was also killed in the accident.

Robert Bledsoe, the owner and operator of Associate Services, testified that he purchased Associate Services sometime after Pesek had started working for them; that Pesek was a hot oil operator at the time he purchased the business, but that he eventually promoted Pesek to field supervisor. He stated that Jim Hincher, the other employee who was also killed in the explosion, had operated a hot oil tank for about two months; that the hot oil truck should have been placed at least 100 feet from the tank and it should have been placed in the position where the wind is blowing away from the unit; that it should not be operated at a

time when the winds are not blowing; and that while this is good practice, standard procedure in the industry is somewhat different, and the hot oil unit is frequently hooked up much closer, chiefly because of time and expense.

Bledsoe testified that the temperature on the day in question was probably about 75 degrees and that there was no wind. He stated that the hot oil unit was not burned in the accident; that it was a flash fire and by the time the fire department got there it was completely out. He stated that Hincher probably thought he had turned the pilot light off, but that when he was told by Pesek to "be sure your pilot light is off," he reached to give the pilot light valve another turn; that at this point Hincher saw a flame; and that possibly he was not able to turn off the pilot light.

He further testified that as far as he knew, no parts or equipment had been taken off the unit between the date of manufacture and the date of the accident, but that parts were replaced from time to time as they needed to be replaced.

Plaintiffs rely chiefly on the testimony of Dr. Grady Rylander, who is head of the Department of Mechanical Engineering at the University of Texas. He stated that the unit involved in this litigation is a Pacemaker 75, manufactured by Murrel's Welding Works of Levelland, Hockley County, Texas. He stated that he inspected the particular unit here involved some months after the accident and it was in a state of partial dismemberment; and that he also subsequently went to defendant's plant and looked at other units under construction.

Rylander testified that he didn't think the design had the safety equipment on it that should have been on it to protect the operating personnel and others that were nearby. In answer to hypothetical questions as to the equipment, he stated that in his opinion it was not designed safely; that there were additional safety devices that needed to be included in the design; that other safety devices are available that would have made this unit safe; that with proper safety equipment on the unit there

would have been no explosion; and that the cost of the unit would have been increased about 10% if it had been equipped with the devices he felt should have been included.

On cross examination, he stated that the first time he ever looked at the design of the hot oil truck was in August 1976; that when he looked at the truck here involved it was partially dismantled and he could not actually say what equipment was on the truck at the time of the accident; and that he really didn't know how the truck involved in the accident was equipped on January 24, 1976, the date of the accident.

In summary, he testified that there were two design defects: (1) A rapid positive shut off of the gas which an operator could actuate was missing. (2) A sensor that would detect the presence of combustible gas in the proximity of the truck and would automatically shut down all fire in the unit, including the pilot light, was missing.

On recross, he admitted that he had no idea how other manufacturers were making hot oil trucks in 1968 and had no idea if other manufacturers were putting on sensors.

Murrell Brown, the owner of Murrel's Welding Works, testified with regard to the safety devices installed on the unit. He stated that there were no other safety devices known to the defendant at the time the product was manufactured or assembled or installed. He further testified that the manufacture of the unit was built to comply with the applicable provisions of the rules and regulations of the Texas Railroad Commission, and that an inspection was made by a representative from that agency. He stated that the defendant performed no

maintenance service on the product after its sale.

He further testified that he examined the unit on August 10, 1976, after the accident, and found that the propane valve, the safety valve on the back, was completely off and gone and was hooked up direct; that the $CO_2$ fire system was inoperative; that five joints of discharge pipe were missing; that the solenoid valve, which is the main shut-off valve that shuts the propane off from the burners, was completely off and gone; and that the purpose of the solenoid valve was mainly for safety so that if anything happened all an operator had to do was to push a switch and it would all shut down, pilot, burners, and all.

We regard plaintiffs' points of error as no evidence points. Plaintiffs do not seek a remand of the plea of privilege for a new trial but ask that the case be reversed and returned to Frio County for a trial on the merits.

In this connection, we deem it proper to point out the character of our review here. In *Banks v. Collins*, 152 Tex. 265, 257 S.W.2d 97 (1953), it was expressly held that the test on appeal from an order sustaining or overruling a plea of privilege is the same in any other civil cases. If the evidence is conflicting and there exists in the record evidence of sufficient probative force to support the judgment of the trial court, then the judgment should not be disturbed on appeal.[1]

Defendant does not here assert that the trial court's finding and verdict is against the great weight and preponderance of the evidence.[2]

---

1. In *Banks*, 257 S.W.2d at 99, the court said:
   This court, in the case of *Wininger v. Ft. Worth & D. C. Ry. Co.*, 105 Tex. 56, 143 S.W. 1150, announced the correct rule when testing the probative force of the evidence when it said: 'The honorable Court of Civil Appeals had authority to reverse the judgment of the trial court on the preponderance of the evidence; but it could not render the judgment, if, discarding all adverse evidence, and giving credit to all evidence favorable to the plaintiff, and indulging every legitimate conclusion favorable to the plaintiff which might

   have been drawn from the facts proved, a jury might have found in favor of the plaintiff'—then it is to be concluded that there is evidence to support the verdict.

2. The Supreme Court, in *Banks*, 257 S.W.2d at 100, also said:
   A new trial may always be ordered by the Court of Civil Appeals where the verdict or findings in the trial court are against the great weight and preponderance of the evidence if the point has been properly raised. . . . However, if the evidence should not so greatly preponderate in favor of the plain-

Plaintiffs here rely on Subdivisions 9a, 23, and 31, Art. 1995.

Subdivision 23 provides, among other things, that "[s]uits against a private corporation, association, or joint stock company may be brought . . . in the county in which the cause of action or part thereof arose; . . . ." Under this Subdivision, plaintiffs must show by a preponderance of the evidence all elements of a cause of action against the corporate defendant whose plea of privilege is being contested, this being the same cause of action alleged and relied upon by the plaintiffs in their petition and controverting affidavit.

Plaintiffs wholly failed to prove venue under Subdivision 23 in Frio County, Texas. Plaintiffs assert that the hot oil unit was defective when manufactured and sold. As such, the breach occurred at the time of the manufacture and sale of such property, which was in Hockley County in 1968. Moreover, the defendant did not contract to do anything, or participate in any transaction in Frio County, Texas. The fact that the injury and damages occurred in Frio County, Texas is insufficient to show that the cause of action or a part thereof occurred in Frio County. *See Employers Casualty Co. v. Clark*, 491 S.W.2d 661 (Tex. 1973); *Stone Fort Nat'l Bank of Nacogdoches v. Forbess*, 126 Tex. 568, 91 S.W.2d 674 (1936); *Johns-Manville Sales Corp. v. Haden Co.*, 543 S.W.2d 415 (Tex.Civ.App.—Ft. Worth 1976) *writ ref'd n. r. e., per curiam*, 553 S.W.2d 759 (Tex.1977); *American Quarter Horse Association v. Rose*, 525 S.W.2d 227 (Tex.Civ.App.—Ft. Worth 1975, no writ). All the trial court's findings of fact pertaining to Subdivision 23 are sufficiently supported by the evidence.

Subdivision 9a provides that a suit based upon negligence may be brought in the county where the act or omission of negligence occurred, or in the county where the defendant has his domicile. Under this Subdivision, to sustain venue in a county other than the county of defendant's residence it was necessary for plaintiffs to establish by a preponderance of the evidence that (1) an act or omission of negligence occurred in the county where the suit was filed; (2) that such act or omission was that of the defendant or of his servants, agents, or representatives acting within the scope of their employment; and (3) that such negligence was a proximate cause of plaintiffs' injuries.

The negligent acts or omissions relied upon by plaintiffs to sustain venue in Frio County under Subdivision 9a are defects in design and manufacture of the hot oil unit consisting chiefly of failure to supply certain safety devices on the truck at the time it was manufactured. Any negligence necessarily occurred at the time and place of manufacture, which was in Hockley County, Texas.

The county in which a negligent act or omission occurs is determinative, and the fact that damage was sustained in a second county will not support venue in the latter. 1 McDonald, Texas Civil Practice § 4.17.2 (1965).

In *Leonard v. Abbott*, 366 S.W.2d 925 (Tex.1963), Abbott sued Leonard in Lamar County for damages to his crops located in Lamar County. Defendant had sprayed herbicides on defendant's lands located in Hopkins County and plaintiffs asserted that this caused damage to plaintiffs' land which was situated in Lamar. Defendant filed a plea or privilege to be sued in the county of his residence and plaintiff controverted, relying on Subdivision 9a. The question presented to the court was whether a suit against a defendant, whose negligent act in one county causes damages in another county, may be tried in the county where the damages occurred. The Court held for the defendant, and said:

> An act can only occur where the act actually takes place. 'Occur' does not include the results of the occurrence, but

---

tiff as to indicate that the finding of no negligence was the product of bias, then the duty of the Court of Civil Appeals would be to

affirm the judgment of the trial court sustaining the plea of privilege.

only the taking place, happening or coming to pass.

Under the record before us, venue is not sustainable in Frio County, Texas under Subdivision 9a, and the trial court's findings of fact and holdings pertaining to Subdivision 9a are sufficiently supported by the evidence.

■■ Plaintiffs rely basically on Subdivision 31. Subdivision 31 provides:

Suits for breach of warranty by a manufacturer of consumer goods may be brought in any county where the cause of action or a part thereof accrued, or in any county where such manufacturer may have an agency or representative, or in the county in which the principal office of such company may be situated, or in the county where the plaintiff or plaintiffs reside.

There is no evidence in the record (1) that defendant had an agency or representative in Frio County; (2) that their principal office was situated in Frio County; or (3) that plaintiffs were residents of Frio County.

It is undisputed that plaintiffs are residents of Atascosa County. It is also undisputed that defendant's residence is Hockley County, Texas.

Plaintiffs therefore must and do rely on that part of Subdivision 31 which provides that suits for breach of warranty by a manufacturer of consumer goods may be brought in the county where the cause of action or a part thereof accrued.

It was incumbent upon plaintiffs to prove by a preponderance of the evidence (1) that the product involved was "consumer goods" and (2) that the cause of action or a part thereof accrued in Frio County.

All pertinent findings of fact by the trial court in this regard were adverse to plaintiffs, the court finding, among other things, that (1) plaintiffs failed to prove that the hot oil truck is "consumer goods"; (2) plaintiffs did not allege in their petition a cause of action based upon a breach of warranty by a manufacturer of consumer goods; (3) plaintiffs failed to prove that the manufacturer breached any warranty of consumer goods; and (4) plaintiffs failed to prove that the cause of action alleged, or a part thereof, accrued in Frio County.

The trial court also found that (1) plaintiffs failed to prove that when the truck was sold in 1968 it was defective in design, manufacture, or assembly; (2) plaintiffs failed to prove that when the truck was sold it was unreasonably dangerous; and (3) plaintiffs failed to prove that at the time of the accident the hot oil unit was in substantially the same condition as when it was sold.

Plaintiffs' first obstacle was to prove that the hot oil truck was consumer goods. The term, "consumer goods," is not defined in this Subdivision of the venue statute.[3] The only Texas case we have concerning this

---

**3.** Various definitions of consumer goods are found in other statutes.

(a) The Uniform Commercial Code, Art. 9.109, Tex.Bus. & Comm.Code Ann. (1968), defines "consumer goods" as follows:

"Goods are

(1) 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes; . . . ."

(b) The Deceptive Trade Practices Act, Art. 17.45, Tex.Bus. & Comm.Code Ann., (Supp. 1977), provides:

"(1) 'Goods' means tangible chattels or real property purchased or leased for use.

\* \* \* \* \* \*

(4) 'Consumer' means an individual, partnership, or corporation who seeks or acquires by purchase or lease, any goods or services."

(c) The Federal Consumer Products Safety Act, 15 U.S.C. § 2052(a)(1) (Supp.1977), defines consumer product as meaning: "[A]ny article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around permanent or temporary household or residence, a school, in recreation, or otherwise . . . ."

(d) Subdivision 5(b), art. 1995 (Supp.1977), provides in part as follows:

"In an action founded upon a contractual obligation of the defendant to pay money arising out of or based upon a consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use, suit . . . may be brought against the defendant . . . in the county . . . ."

particular venue provision under Subdivision 31 is the recent case of *Maintenance and Equipment Contractors v. John Deere Co.*, 554 S.W.2d 28 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ filed). This suit involved a tractor allegedly manufactured by John Deere Co. Plaintiff sustained injuries while operating such tractor. Plaintiff's cause of action was based upon negligence and strict liability in tort for defective design. The Court of Civil Appeals held that the tractor was "consumer goods" under the provisions of Subdivision 31 of Art. 1995.

Assuming arguendo, that the hot oil truck here involved was consumer goods within the meaning of the statute, plaintiffs still had another difficult burden, that is, to prove a cause of action against defendant under Subdivision 31 accruing in Frio County, Texas. Plaintiffs rely heavily on the above mentioned case of *Maintenance and Equipment Contractors v. John Deere Co.* We do not regard such case as controlling in the matter before us. It was undisputed in that case that the plaintiff in such suit was a resident of the county where the suit was brought, and Subdivision 31 specifically provides that suits for breach of warranty by a manufacturer of consumer goods may be brought in the county where the plaintiff resides. Such opinion specifically points out that plaintiffs relied on this portion of Subdivision 31 to maintain venue in the county where the suit is filed.

The Court further said,

Considering the language of subdivision 31, it is our opinion that a cause of action must be proved if venue is sought in the county where the cause of action or part thereof accrued. However, the cause of action is not an essential venue fact if the plaintiff established that the defendant has an agency, representative or its principal office in the county where suit is filed, or if suit is filed in the county where the plaintiff resides. 554 S.W.2d at 31.

In the case before us it is undisputed that plaintiffs were residents of Atascosa County at all relevant times. It is also clear from plaintiffs' briefs and pleadings that they rely on that part of Subdivision 31 that is predicated upon the existence of a cause of action accruing in Frio County, Texas.

Defendant asserts, and the trial court found, that plaintiffs did not allege a cause of action based upon a breach of warranty by a manufacturer of consumer goods. Assuming, without deciding,[4] that the pleadings were sufficient, plaintiffs wholly failed to prove that a cause of action or a part thereof accrued in Frio County for breach of warranty of consumer goods.

Plaintiffs rely on evidence by Dr. Rylander, an expert witness who testified in some detail with regard to design defects, defects in manufacture or assembly, and the need for additional safety devices. He admitted that he did not examine the hot oil truck until some months after the accident occurred and that the hot oil unit was partially dismantled that time; that he could not state what equipment or devices were actually on the hot oil unit at the time of the accident; that he did not know as to whether the truck that he examined in August

---

4. Defendant asserts that nowhere in plaintiffs' petition do they assert or mention breach of warranty of consumer goods, and that plaintiffs' first pleading, which asserts breach of warranty and Subdivision 31, is their controverting affidavit. Plaintiffs maintain that this is sufficient.

It is true that there are certain subdivisions in the venue statutes that do not require proof of the cause of action (Subdivisions 14 and 27), and it is also true that some venue facts may be properly alleged in the controverting plea without being set up in the petition. *See Wilson's Pharmacy, Inc. v. Behrens Drug Co.*, 494 S.W.2d 161 (Tex.1973). However, the Supreme Court in that case said:

"The nature of the suit is an important venue fact under several subdivisions of Art. 1995, and the petition is the best and all sufficient evidence of the nature of the suit. . . . The character of the suit as disclosed by the petition cannot be changed for venue purposes by allegations in the controverting plea. Where the nature of the suit is an essential venue fact, therefore, this fact should appear in or from both the petition and the controverting plea."

1976 was in the same condition as the one that was sold in 1968; and that he could not tell exactly how the truck was equipped at the time of the accident.

Our Supreme Court, in *Hood v. Texas Indemnity Ins. Co.*, 146 Tex. 522, 209 S.W.2d 345, 346 (1948), in discussing opinion evidence, said:

> That character of testimony is but evidentiary and is never binding upon the trier of facts. * * * Opinion testimony does not establish any material fact as a matter of law.

In a later case by the Supreme Court, *Luttes v. State*, 159 Tex. 500, 324 S.W.2d 167, 189 (1958), the Court said:

> While, in a limited sense, all testimony may involve opinions of the witnesses, the proof here was peculiarly of the 'opinion' or 'expert' type, and the occasion has to be at least highly exceptional when such testimony, even though not contradicted by an opposing expert, must be deemed true as a matter of law. * * * the mere qualification of a witness as an expert does not cut off the factfinder from exercising considerable judgment of his own about how far his opinions are to be relied on.

Even if we accept Dr. Rylander's opinion as true, his testimony is to the effect: (1) that the design, manufacture, and assembly of the hot oil truck was defective; (2) that there was a failure to include certain safety devices at the time of the manufacture; and (3) that the truck was unreasonably dangerous at such time. The acts relied upon by plaintiffs all occurred in Hockley County at the time of the design, manufacture, and assembly of such hot oil unit in 1968, many years prior to the accident here complained of. Such evidence does not establish the necessary venue facts to maintain venue in Frio County, Texas, even if it is accepted as true. Moreover, there is conflicting testimony of other witnesses and much of Rylander's testimony is disputed.

We have concluded that: (1) the trial court's material findings of fact are sufficiently supported by the evidence; (2) plaintiffs failed to prove by a preponderance of the evidence a cause of action against defendant in Frio County, Texas; (3) plaintiffs failed to establish the necessary venue facts to maintain venue in Frio County, Texas under Subdivisions 9a, 23, or 31, Art. 1995; (4) plaintiffs failed to prove the necessary venue facts to maintain venue in Frio County, Texas.

The trial court correctly sustained defendant's plea of privilege. The judgment is affirmed.