**LUBBOCK MANUFACTURING
CO., Appellant,**

v.

**William SAMES, III, Administrator of
the Estate of Jesus Verduzco,
Deceased, et al., Appellees.**

**No. 8159.**

Court of Civil Appeals of Texas,
Beaumont.

Nov. 22, 1978.

Rehearing Denied Dec. 14, 1978.

Damon Ball, San Antonio, for appellant.

J. Patrick Hazel, Austin, for appellees.

CLAYTON, Justice.

This appeal involves the question of venue for an action brought against Lubbock Manufacturing Company (hereinafter called defendant), a resident of Lubbock County, Texas.

This suit was originally filed in Maverick County by William Sames, III, as Administrator of the Estate of Jesus Verduzco, deceased, and Francisca Cedillo Vidua de Verduzco, Individually, and as next friend of the minor children of Jesus Verduzco, deceased (hereinafter called plaintiffs) against this defendant, Fontaine Truck Equipment Company, Inc., Altamil Corporation, and Surtigas, S.A.

Defendant filed its plea of privilege, asserting its right to be sued in Lubbock County, the county of its residence. Plaintiffs filed their controverting plea, contending that venue was maintainable in Maverick County under the terms of *Tex.Rev.Civ. Stat.Ann. art. 1995, subdivs. 4, 23, 27, 29a* (Vernon 1964), and *subdivs. 9a, 31* (Vernon Supp.1978).

The trial court overruled defendant's plea of privilege. Subsequent to the hearing, but prior to the rendition of the order, this cause was transferred to Val Verde County, Texas, pursuant to *Tex.R.Civ.P. 257*, and such action was taken subject to and with-

out prejudice to defendant's plea. Appellant makes no complaint to this action under *Rule 257.*

Jesus Verduzco, deceased, was the driver of a Surtigas, S.A., tractor-trailer which overturned in Eagle Pass, Maverick County, exploded, and killed several persons, including Jesus Verduzco. William Sames, III, was named Administrator of the Estate of Jesus Verduzco. William Sames, III, was a resident of Maverick County, and the administration of the Estate of Jesus Verduzco was pending in Maverick County. The tank-trailer which overturned and exploded was designed, manufactured, and sold by Lubbock Manufacturing Company, a private corporation, which maintained its place of residence in Lubbock County. None of the other defendants filed pleas of privilege.

■ The trial court did not file findings of fact and conclusions of law, and none were requested. Under these circumstances, the judgment of the trial court should be upheld if there is sufficient evidence of probative value in the record to sustain venue under any of the subdivisions pleaded. *Banks v. Collins,* 152 Tex. 265, 257 S.W.2d 97 (1953); *Loomis v. Sharp,* 519 S.W.2d 955 (Tex.Civ.App.—Texarkana 1975, writ dism'd); *Key v. Davis,* 554 S.W.2d 60 (Tex.Civ.App.—Amarillo 1977, no writ).

The cause of action asserted by plaintiff was based upon strict tort liability in that the tank-trailer was "defective in design and/or manufacture and that said defect existed at the time that said tank was introduced into the stream of commerce and said defect caused or contributed to cause the injuries and subsequent death of Jesus Verduzco, deceased. . . ."

Appellant's thirteenth and fourteenth points of error complain of the trial court's action in overruling the plea of privilege because there is no evidence, or insufficient evidence, that a cause of action arose in Maverick County.

It was stipulated by the parties that "[d]amages sustained by . . . plaintiffs was proximately caused by the over-turning of the trailer . . . and the fire which resulted therefrom, which occurred in Eagle Pass, in Maverick County, Texas, . . . that Lubbock Manufacturing Company manufactured and sold the liquified petroleum gas transportation tank . . . which was involved in the accident . . . and which trailer was attached to the truck . . . at the time of the incident. Lubbock Manufacturing Company is in the business of manufacturing and selling liquified petroleum gas tanks. . . ."

Venue is maintainable in Maverick County under the provisions of *subdiv. 23 of art. 1995* if plaintiffs have proved a cause of action and if the cause of action, or a part thereof, arose in Maverick County.

The record reflects that the deceased was driving the truck and tank trailer along the highway near Eagle Pass, in Maverick County, when the truck took a sudden turn to the left and then a sudden turn back to the right and then overturned. The truck and tank, after the turnover, "traveled for a distance of 85 to 95 feet before the explosion and resulting fire."

One of plaintiff's expert witnesses testified that he found defects in the tank-trailer design in "basically three areas," and those three areas "are a design such that it tends to a propensity for overturn of the vehicle. It does not provide for resistence to a penetration or a failure or breaching of the tank as a result of an easily anticipated accident involving an overturn of the trailer."

Another witness testified the initial speed of the truck immediately preceding the events leading up to the overturn to be "from 67 to 70 miles an hour," and that the overturn speed to be 35 miles an hour.

Further testimony from an expert witness that "considering the reconstruction [of the accident], the center of gravity of the trailer, the radius of the curve and the speed at turnover," the radius of turn of the tractor was a reasonably foreseeable maneuver that might be engaged in by a driver or operator of a tractor of "this type and character," and that such turning ma-

neuver "should be foreseeable by a reasonably prudent manufacturer." This witness further testified that, in considering the contents of the trailer, and the high center of gravity, the road condition available, and the environment of use of this tractor-trailer combination rendered the trailer as designed and constructed unreasonably dangerous. He also testified that the "truck-tractor semi-trailers, they have high CGs [centers of gravity], and so this makes them susceptible to turnover. . . ." With this susceptibility of turnover then the commodity being transported—the liquefied petroleum gas—adds to the unreasonably dangerous propensity and condition. "[S]o with this condition existing, then the—to alleviate this or reduce it, the CG [center of gravity] of the trailer should be lowered in order to reduce its susceptibility to turnover."

An expert witness further testified that "if the material in the tank remained elastic then the stress induced in the tank due just to the bending loads, and not including the internal pressure loads would be far in excess of the ultimate strength of the material out of which the tank is constructed; so this, then, would tell us that we do, in fact, have a problem—at least a potential problem with this tank in the event that it does roll over, and then the third area, as I recall, is the fact that there is nothing in the design of this tank to attempt to limit the severity of the hazard in the event that the tank is actually breached. That is to say that when the tank is actually breached we could expect a complete disbursement of the entire content of the tank, and, of course, there are alternatives to this; that is to compartmentize [sic] the tank in such a fashion that you might breach part of it and lose, say, 20 percent of the contents or whatever the case might be without losing the entire contents. Of course, a very severe problem is associated with this particular area which happened in this particular accident and that is the rocketing effect in the event say the back end of the tank is broken off. I think in this particular case the tank rocketed about a third of a mile—that order of magnitude."

There is other testimony that the center of gravity was very critical and that the "turnover, itself, arose from driver control because he has turned the combination on a radius which was—is critical for the speed for which he was traveling . . .. He turned on a radius such that he exceeded the limit of the truck-tractor semi-trailer as far as turnover." The expert witness upon being asked, ". . . and the higher the center of gravity of a unit would it be axiomatic to say the greater its likelihood of overturn?" He answered, "That would be true because as you raise the center of gravity on the same given radius then you reduce the speed at which it would turn over. As you lower the center of gravity, then the speed comes up for this same given radius."

■ Plaintiffs' cause of action was asserted as a strict tort liability case under the provisions of the *Restatement (Second) of Torts § 402A* (1965). The rule applies to unreasonably dangerous products whether the defect occurred in their production or their design. *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974).

■ We have carefully reviewed all the evidence which consists of approximately seven hundred pages in the statement of facts, and we hold that such evidence is factually sufficient to support a finding by the trial court that a cause of action under the provisions of *Restatement (Second) of Torts § 402A* was proven in that the tank-trailer was defectively designed, that it was unreasonably dangerous to the user, and that the very nature of the tank-trailer was such that there had been no substantial change in the condition in which it was sold by the manufacturer. Therefore, the judgment of the trial court should not be disturbed. *Banks v. Collins*, supra; *Loomis v. Sharp*, supra; *Key v. Davis*, supra.

In addition to proving a cause of action, under the provisions of *Tex.Rev.Civ.Stat. Ann. art. 1995, subdiv. 23*, it is necessary to prove that such cause of action, or part thereof, arose in Maverick County.

The question to be decided here is whether a cause of action based upon strict tort liability in defective design cases can be brought, for venue purposes, under *subdiv. 23* of *art. 1995*, in the county where the accident occurred, notwithstanding the fact that the defect in design was manufactured or created in a county other than the forum county.

Our Supreme Court, in *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975), states, with reference to a strict tort liability case, "A finding of negligence is not required. In fact, the supplier may be liable even though he has exercised all possible care in the preparation and sale of his product. . . While the definitions of 'negligence' and 'defective design' may have certain similar or common elements, they involve two separate theories of recovery."

▮ In the very recent case of *Gonzales v. Caterpillar Tractor Company*, 571 S.W.2d 867 (1978), our Supreme Court again reiterates its distinction between "negligent" design and "defective" design. The Court states:

"The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production."

Following the language in the *Gonzales* case, the emphasis or focal point, with reference to the cause of action in strict tort liability, is and should be placed upon the defective design of the product and not upon the conduct of the manufacturer in creating the defective design. It follows that the cause of action then is based upon the condition of the product and not upon the acts in manufacturing the product. The condition of the product, i. e., the defective design, gives rise to the cause of

action in strict tort liability, and the conduct of the manufacturer or the place where such conduct occurs is of no import in so far as the place where the cause of action arose is concerned. We hold that in cases of strict tort liability based upon defective design, the cause of action being properly proven, arises in the county where the defectively designed product exists and causes the accident and is the producing cause of the physical harm sustained. We therefore hold that venue in this case is maintainable in Maverick County under *Tex.Rev.Civ.Stat.Ann. art. 1995, subdiv. 23* (Vernon 1964).

▮ We agree with appellant that venue in Maverick County is not maintainable under *subdivs. 4, 9a, 27, 29a, and 31*.

The judgment of the trial court in overruling appellant's plea of privilege is affirmed.

AFFIRMED.

KEITH, Justice, dissenting.

I respectfully dissent.

While driving the truck-tank combination in Maverick County, plaintiffs' decedent— through inadvertence, negligence, or accident—overturned the rig; it skidded, ruptured, and he was killed. Defendant was sued because, more than nine years earlier, it had manufactured and sold the tank in Lubbock County in accordance with the provisions of the Liquefied Petroleum Gas Code.[1] This particular tank had been attached to various trucks and trailers and had traveled more than nine hundred thousand miles—more than four times the distance from the earth to the moon at perigee—without incident.

Defendant is not shown to have done anything in Maverick County which contributed to the accident or decedent's injury and death—except that it manufactured the tank in Lubbock County in accordance with designs approved by the agency charged with promulgating and enforcing

1. At the time of the manufacture and sale of the tank in question, the statute was *Tex.Rev. Civ.Stat.Ann. art. 6066d, et seq. (1962)*. The statute has been recodified and the "LPG Code" is now found in *2 Tex. Natural Resources Code §§ 113.001, et seq. (1978)*.

safety in the transportation of liquefied petroleum gas.

Now the majority of this court, without citation of any authority in point, holds that defendant's acts in designing the truck in Lubbock County gave rise to a cause of action in Maverick County solely because the accident and damages occurred in the latter county. The case most nearly in point which has come to my attention is *Pesek v. Murrel's Welding Works, Inc.*, 558 S.W.2d 39, 44 (Tex.Civ.App.—San Antonio 1977, writ dism'd), involving the alleged defective design of a hot oil unit which exploded. Pesek sought to recover on strict liability in tort because of the defective design of the hot oil unit. The court, passing upon a similar question to that confronting us, said:

"Plaintiffs assert that the hot oil unit was defective when manufactured and sold. As such, the breach occurred at the time of the manufacture and sale of such property, which was in Hockley County in 1968. Moreover, the defendant did not contract to do anything, or participate in any transaction in Frio County, Texas. The fact that the injury and damages occurred in Frio County, Texas is insufficient to show that the cause of action or a part thereof occurred in Frio County." [2]

Justice Klingeman, writing for the court in *Pesek*, cited, inter alia, *Johns-Manville Sales Corp. v. Haden Co., Inc.*, 543 S.W.2d 415, 419 (Tex.Civ.App.—Fort Worth 1976), writ ref'd n.r.e., *per curiam*, 553 S.W.2d 759 (Tex.1977).

The Supreme Court stated the holding of the intermediate court in *Johns-Manville*:

"The court of civil appeals reversed, holding that the only 'portion' of Haden Company's cause of action which 'accrued' in Wichita County was the sustentation of damages by Haden Company, and that damages alone is not a 'part of the cause of action' within the meaning of subdivision 27. 543 S.W.2d 415."

The Court then noted its disagreement with another case and concluded by stating, "We agree with the holding in the present case." (553 S.W.2d at 760)

There is another facet of the holding of the majority which disturbs me—the failure to give proper recognition to the dual burden assumed by plaintiffs seeking to hold a domestic corporation in a foreign county under *subdivision 23* of the venue statute. The necessary predicate to a recovery in every tort action was set out by Chief Justice Greenhill in *Abalos v. Oil Development Co. of Texas*, 544 S.W.2d 627, 631 (Tex. 1976):

"[A]ny plaintiff must prove the existence *and* violation of a legal duty owed to him by the defendant to establish tort liability." (emphasis supplied)

Under the definitive holding made in *Employers Casualty Co. v. Clark*, 491 S.W.2d 661, 662 (Tex.1973), the plaintiff, relying upon *subdivision 23,* must establish his cause of action "by proving at least a right and a breach by the defendant of the corresponding duty."

Plaintiffs sought to establish the existence of a legal duty owed by defendant to their decedent by the invocation of *Section 402A, Restatement, Torts 2d.* To bring themselves within this section, it was their burden to show that the tank was unreasonably dangerous to the user (their decedent) because of the defective design thereof. This was but half of their duty under *Abalos*, supra, since it was also their burden to prove the violation of the legal duty. *Western Wool Commission Co. v. Hart*, Tex., 20 S.W. 131, 132 (Tex.Comm.App. 1892, opinion adopted); *Mercantile Bank & Trust Co. v. Schuhart*, 115 Tex. 114, 277 S.W. 621, 624 (1925).

I am disturbed that the majority has not addressed the failure of the plaintiffs to satisfy both elements of the burden imposed upon the plaintiffs in this cause. Defendant's points have been, in effect, overruled

---

**2.** Plaintiffs' able counsel, admitting that *Pesek* "appears to be contrary" to the position taken by plaintiffs in this case, argues that the author of *Pesek* "was viewing this as a contract rather than a tort." Such a rationalization must come as a distinct surprise to the author of the opinion and to trial counsel for Pesek's widow and children.

*sub silentio.* Assuming, arguendo, the existence of the legal duty to plaintiffs' decedent (under § *402A* ), I find no evidence tending to establish a violation of that legal duty in Maverick County.

Since I would follow the rationale of *Clark* and *Pesek*, I dissent from the judgment which affirms the trial court's denial of defendant's right to be sued in the county of its domicile.