Santiago GONZALES et al., Petitioners,

v.

CATERPILLAR TRACTOR COMPANY, Respondents.

No. B–7440.

Supreme Court of Texas.

Oct. 11, 1978.

Page Keeton, Austin, Gochman & Weir, Warren Weir, John Scarzafava and Charles Herring, Jr., Clark, Thornton & Summers, W. Burl Brock, San Antonio, for petitioners.

Wiley, Plunkett, Gibson & Allen, Robert A. Allen and Ronald Hornberger, San Antonio, for respondents.

STEAKLEY, Justice.

Santiago Gonzales suffered back injuries when he fell from a step on a Caterpillar tractor. He brought this suit against Caterpillar alleging a design defect in the step and negligent design of the step. Judgment was rendered on the jury verdict in favor of Gonzales for $252,991.05.[1] On appeal by Caterpillar, the Court of Civil Appeals reversed and rendered judgment that Gonzales take nothing in his suit. The court held there was no evidence of either a design defect or of negligent design. 562 S.W.2d 573. We reverse the judgment of the Court of Civil Appeals and remand the cause to that court.

The Caterpillar product involved in this accident was a Model 941 "Traxcavator." It is a tractor designed to operate primarily as a front-end loader. A large shovel as-

---

1. A portion of this sum, $17,945.68, was awarded to Intervenor, New York Underwriters Insurance Company, on its claim for subrogation arising from the payment of Workers' Compensation benefits. No contest is made of this award or of the amount.

sembly is attached for lifting dirt and other material from the ground. The tractor is mounted on tread or tracks similar to those commonly seen on military tanks. It is designed to operate in muddy or other adverse conditions where wheeled vehicles would not be workable. The machine is controlled from a work station atop the vehicle which contains the operator's seat and the controls for steering and operating the shovel.

Ingress and egress to and from the work station is accomplished by use of a step mounted on the side of the Traxcavator. The step is located on the undercarriage and is made from a strip of "angle iron" or sheet metal bent into a "U" shape. The open ends of the "U" are welded to the Traxcavator between the upper and lower treads, so that only the narrow edge of the metal strip is used as the step. The rear portion of the "U" is approximately 10 inches across, and a depression of some 8 inches in width is cut in this portion. The purpose of the depression is to prevent the foot from slipping sideways and off the step. The step is designed so that it does not extend outward from the Traxcavator farther than the treads and it is necessary for the operator, while dismounting, to lean away from the vehicle to locate the step. Handholds or "grabirons" are mounted near the work station for the operator to utilize while mounting or dismounting.

Gonzales was dismounting the Traxcavator when this accident occurred. He testified that he was holding firmly to the handholds when he leaned back and placed his foot on the step; and that his foot slipped which caused him to fall. Gonzales was operating the machine at a "caliche pit" on the morning in question and he testified that the ground was very muddy. This testimony was corroborated by a co-worker. Gonzales and the co-worker also testified that mud collected by the track was carried over the step upon rotation of the tread, and that considerable quantities of the mud dropped on the step.

In his trial pleading, Gonzales alleged that the step was defective in four respects in design, and that Caterpillar was guilty of five separate acts of negligence in the design. The alleged defects in design were (1) the step could not be seen by the operator as he was dismounting; (2) the operator was required to lean away from the machine in order to reach the step when dismounting; (3) no adhesive or antiskid material was placed on the step to prevent slippage; and (4) the step was located in such position that mud and dirt adhering to the tread was deposited on the step as the tread revolved. The alleged acts of negligence were in designing the step in these respects, and additionally, in failing to alter the design and placement of the step to cure these alleged defects.

The question of defective design was submitted to the jury in the following form:

"Do you find, from a preponderance of the evidence, that the step on the Model 941 Caterpillar Traxcavator in question, was defectively designed at the time it was sold by defendant, Caterpillar Tractor Company?

"By the term 'defectively designed' is meant such a design as would create an unreasonable risk of harm to the ordinary user of the product involved when the product is used in the manner in which it was intended to be used.

"By the term 'unreasonable risk of harm' is meant such a risk of harm as is more dangerous than would be contemplated by the ordinary user who uses the product with ordinary knowledge." [2]

The jury answered that the step was defectively designed which was a producing cause of the occurrence in question. The jury further found that Gonzales did not assume the risk of the defective design.

The question of negligence was submitted to the jury as follows:

"Do you find, from a preponderance of the evidence, that defendant, Caterpillar

2. This submission is in terms of one of the alternate tests articulated in *Henderson v. Ford Motor Company*, 519 S.W.2d 87 (Tex.1974), and *General Motors Corp. v. Hopkins*, 548 S.W.2d 344 (Tex.1977).

Tractor Company, negligently designed the step on the Model 941 Caterpillar Traxcavator in question?

" 'Negligently,' or 'Negligence,' means failure to use ordinary care, that is to say, failure to do that which a reasonable and prudent manufacturer engaged in the manufacture of like or similar equipment would have done under the same or similar circumstances, or doing that which a manufacturer with ordinary prudence would not have done under the same or similar circumstances."

The jury answered that the step was negligently designed which was a proximate cause of the occurrence. The jury refused to find that Gonzales was contributorily negligent.

As noted above, the essential holdings of the Court of Civil Appeals were that there was no evidence of a design defect and no evidence of negligent design. The correctness of these rulings is the ultimate question to be resolved.

■ The trial court defined "unreasonably dangerous" in terms of the ordinary user. Cf. *General Motors Corporation v. Hopkins*, 548 S.W.2d 344 (Tex.1977), and *Henderson v. Ford Motor Co.*, 519 S.W.2d 87 (Tex.1974). There is no complaint of this manner of submission. The question, then, is whether there was evidence that the Model 941 Traxcavator when sold for its intended use was in a defective condition unreasonably dangerous to Gonzales as an ordinary user. See, Green, *Strict Liability Under Sections 402A and 402B: A Decade of Litigation*, 54 Tex.L.Rev. 1185, 1205–1210 (1976).

Considerable testimony was presented to the jury with respect to the accumulation of mud on and around the step. Gonzales, his co-worker, his expert witness, his employer, and the engineers testifying for Caterpillar, stated that during operation of the Traxcavator in muddy conditions, mud picked up by the track would fall on and around the step. There was also testimony from witnesses presented by Gonzales and by Caterpillar that mud deposited on and around the step would cling to the undercarriage of the vehicle and would continue to build up until it eventually covered the step. William A. Boyd, the County Commissioner for whom Gonzales worked, described the problem caused by the accumulation of mud as follows:

"Q. Have you ever gotten off the machine, when there wasn't any mud packed in, but when dirt or debris was in the step?

A. Yes, sir.

Q. Have you ever kicked dirt aside or—

A. Well, if it's loose dirt, you might kick it off with your toe, but if it's packed on there, you can't get it off. It's packed against the machine, because the whole—when you step, it goes against—well, the track housing under there, where it holds the dirt."

William E. Conroy, the supervising engineer in the design of the Model 941 Traxcavator, testified:

"Q. You would agree with Mr. Piepho that sometimes that particular step gets covered with mud that adhers [sic] to that surface?

A. There is mud that collects on the undercarriage.

Q. You've seen that?

A. Yes. I have.

Q. And you have seen mud completely cover the step; have you not?

A. With the machine operating, yes. I have seen it, you know, buried in mud.

Q. Now, when the machine is operating and the mud's going around on the track, tell the jury where the operator is?

A. Pardon? Would you please repeat?

Q. The operator is up in the operators' station; isn't he?

A. Yes.

Q. When the machine is being operated?

A. Yes.

Q. And the mud is being brought up and then dropped in that general track area; is it not?

A. Yes. Okay.

Q. And in—that comports with your experience; doesn't it?

A. Yes.

Q. And if the step is covered, or the track is largely covered in mud, as you've testified you say you've seen the Caterpillar 941, the step is pretty useless at that point; isn't it?

A. I think it depends on the nature of the material. It would be my experience that most mud is very soft, and it could be very soupy. Now the soft and soupy would just run off like water, and I do believe that it does not render the step useless because it is a soft type material. And that you could always get your foot onto the step by kind of making a little hole, digging your foot in, and kicking your foot against the side of the muddy area.

Q. Then, of course, what you're just saying, you also agree with Mr. Piepho that that hole there right behind the step for mud to go through, sometimes doesn't work and sometimes there is mud sitting up there any way?

A. It's not perfect. I think it tends to shed material quite readily, but it is possible that material would collect in the general area.

Q. And, so, I guess you're saying, from the answer that you gave, that it's the operator's obligation when exiting the machine, if the step is covered with mud, to kind of kick it off and get it clear; right?

A. I think it's his obligation to be carefull [sic] in exiting the machine, and to see the conditions that exist and to take due care and caution and do whatever is proper under a given circumstance."

There was further testimony that anti-skid or adhesive material had not been placed on the step and that the only protection against slippage was the sharp edge of the sheet metal. John R. Frassanito, who testified for Gonzales as an expert, stated that in his opinion, the step was unreasonably dangerous.

Reviewing the evidence in its most favorable light, together with the supporting inferences, and rejecting the contrary evidence and inferences, we hold there was evidentiary support of more than a scintilla for the jury finding of design defect. See *Miller v. Bock Laundry Machine Co.*, 568 S.W.2d 648 (Tex.1977); and *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975).

As later noted, this ruling requires a remand to the Court of Civil Appeals for consideration of Caterpillar's factual insufficiency points. This being so, we will also consider the additional holding of the Court of Civil Appeals that there was no evidence to support the jury finding of negligent design.

In holding there was no evidence of negligent design, the Court of Civil Appeals asserted that there "is little difference between strict tort liability and negligence where the action is against the manufacturer." 562 S.W.2d at 580. In *Rourke v. Garza, supra,* we said:

While the definitions of "negligence" and "defective design" may have certain similar or common elements, they involve two separate theories of recovery.

530 S.W.2d at 800. The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production.

The standard of care required of a manufacturer in the design of products is expressed in Sections 395 and 398 of the Restatement (Second) of Torts (1965), which we quoted with approval in *Otis Elevator Co. v. Wood*, 436 S.W.2d 324, 327 (1968). Section 395 states that:

A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he

should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Section 398, a special application of the rule in Section 395, is entitled, "Chattel Made Under Dangerous Plan or Design." It states:

A manufacturer of a chattel made under a plan or design which makes it dangerous for the uses for which it is manufactured is subject to liability to others whom he should expect to use the chattel or to be endangered by its probable use for physical harm caused by his failure to exercise reasonable care in the adoption of a safe plan or design.

■ The question, then, is whether there was evidence from which the jury could conclude that the tractor in question was negligently designed by Caterpillar. We hold there was.

There was evidence that the primary consideration in the use by Caterpillar of the step in question was its availability from production of like steps for tractors other than the Model 941. There was evidence that no particular instructions regarding the safety of the step were given to the design engineer on the Model 941 project, and that no tests as to the safety of the step were made after it was incorporated in the Model 941 Traxcavator.

It was also shown that at the time the Model 941 was manufactured and sold, Caterpillar had compiled a "design reference" containing guidelines to be utilized in the design and manufacture of vehicle access systems; two of these guidelines were as follows:

9. All steps, ladders, and walkways into platform area shall be designed to minimize accumulation of debris from the vehicle wheels and tracks.

10. All steps, ladders, walkways and platforms shall be made of or coated with an "antiskid" material.

It was shown that these guidelines were available to the chief engineer of the Model 941 project for some time prior to final approval and manufacture of the vehicle; and that no corrective action was taken in the light of the guideline requirements. As reviewed earlier, the access step in question was not made of or coated with any form of "antiskid" material. The testimony of the supervising engineer of Caterpillar, quoted earlier, established his recognition that debris and mud would fall upon and adhere to the access step, and that the operator of the machine would be required to "kind of" make "a little hole, digging your foot in, and kicking your foot against the side of the muddy area."

Reviewing the evidence as we are required to do in the manner heretofore recognized, we hold there was evidentiary support of more than a scintilla for the jury finding that the step in question was negligently designed.

■ In sustaining Caterpillar's "no evidence" points, the Court of Civil Appeals stated that it did not reach other points asserted by Caterpillar. Among these were complaints that the evidence was factually insufficient to support the jury findings. These points are within the exclusive jurisdiction of the Court of Civil Appeals. Accordingly, the judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court. See *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263 (Tex. 1974), and authorities there cited.