CATERPILLAR TRACTOR
COMPANY, Appellant,

v.

Santiago GONZALES et al., Appellees.

No. 6617.

Court of Civil Appeals of Texas,
El Paso.

March 26, 1980.

Rehearing Denied April 23, 1980.

Plunkett, Gibson & Allen, Robert A. Allen, Ronald Hornberger, San Antonio, for appellant.

Gochman & Weir, John F. Scarzafava, Warren Weir, San Antonio, Pearson & Caballero, Ray Pearson, El Paso, for appellees.

Clark, Thornton & Summers, W. Burl Brock, San Antonio, for intervenor.

## OPINION

WARD, Justice.

This personal injury case involving the design defect of a step on the side of a Caterpillar tractor was previously before us.

562 S.W.2d 573 (Tex.Civ.App.). There, we held there was no evidence to support findings of either a design defect or of a negligent design of the step. The Supreme Court reversed our judgment on those two holdings and remanded the cause to this Court for disposition of points not previously reached, including factually insufficient attacks on the findings of design defect and of negligent design which are within the exclusive jurisdiction of the courts of civil appeals. *Gonzales v. Caterpillar Tractor Company*, 571 S.W.2d 867 (Tex.1978). We will now affirm the judgment of the trial Court.

At this time, we only note that the Plaintiff, Santiago Gonzales, slipped and fell from a step which was attached to the side of the tractor, and which at the time was covered with mud. For all details, we refer to the factual statements contained in the published opinions. As therein pointed out, trial was to a jury which determined that the step on the machine was defectively designed by the manufacturer, and this was a producing cause of the fall. Further, it was determined that the step was negligently designed by the manufacturer and this was a proximate cause of the fall. The jury refused to find in favor of the manufacturer on the defensive issues. Based upon the jury's verdict, judgment was entered that the Plaintiff recover from the manufacturer the sum of $252,991.05.

Since the "no evidence" point regarding a design defect has been overruled by the Supreme Court, we will first consider the Appellant's point No. 14 that there was insufficient evidence to support the jury's finding that the step was defectively designed. The Court defined "defectively designed" as such a design as would create an unreasonable risk of harm to the ordinary user of the product involved when the product is used in the manner in which it was intended to be used. The term "unreasonable risk of harm" was defined as meaning such a risk of harm as is more dangerous than would be contemplated by the

ordinary user who uses the product with ordinary knowledge. The submission was under the consumer or user's alternative test approved in *Henderson v. Ford Motor Company*, 519 S.W.2d 87 (Tex.1974), and *General Motors Corporation v. Hopkins*, 548 S.W.2d 344 (Tex.1977), and since disapproved in *Turner v. General Motors Corporation*, 584 S.W.2d 844 (Tex.1979). In considering the factual sufficiency point, we have considered all of the evidence. We have also done this in light of the Texas policy which is most liberal in favor of jury determination of the defectiveness issue in a products liability case. Whatever is said about the *Turner* case, the fact remains that a design defect was upheld from both legal and factual insufficiency attacks, although no mass-produced automobile in the United States had ever come equipped with a roll bar or roll cage. See the plea of privilege opinion of *Turner v. General Motors Corporation*, 514 S.W.2d 497 (Tex.Civ. App.—Houston [14th Dist.] 1974, writ ref'd n.r.e.). The point is overruled.

Normally, the question as to whether the defect existed at the time it left the manufacturer's control is not an issue in a design case, since the defective condition by definition can only come about when the product was within the manufacturing process itself. However, here the Appellant, by a series of six points, challenges the Appellees' case in this regard. In this connection, the parties stipulated that at the time the tractor was sold and delivered to Frio County in April, 1971, it was then in the same condition with regard to the step and the track as it was when it was manufactured in January, 1969. The Appellant makes its attack mainly because the accident did not occur until some eighteen months after the County purchased the machine and because of testimony that, at the time of the accident or at the later investigation, the top of the step was shiney and appeared worn. What the Appellant overlooks is that the main objection to the step made by the Appellee Gonzales was that it was in a position on the tractor where it caught excessive mud and where it was difficult to see when the operator was descending the machine. The Appellee Gonzales testified to this effect as did his expert witness, John Frassanito. Further, the evidence by Caterpillar's experts indicated that the step followed in every respect the manufacturer's design drawings. The special issue regarding defective design was in the following form and inquired whether or not the step had been defectively designed at the time it was sold by the Appellant:

> Do you find, from a preponderance of the evidence, that the step on the Model 941 Caterpillar Traxcavator in question, was defectively designed at the time it was sold by defendant, Caterpillar Tractor Company?

The issue was not objected to by either party. The jury not only answered the issue in the affirmative, but also found by the second special issue that "the defectively designed step, . . . was the producing cause of the occurrence in question." From the standpoint of the Plaintiff Gonzales, that completed the necessary requirements to the establishment of his cause of action; that is, proof and findings of the existence of a defect, that the defect existed at the time the manufacturer relinquished control of the product and that the injury caused the injury. 2 Restatement of Torts 2d sec. 402A (1965); *McKisson v. Sales Affiliates, Inc.*, 416 S.W.2d 787 (Tex. 1967); *Gravis v. Parke-Davis & Co.*, 502 S.W.2d 863 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n.r.e.).

In reviewing the legal sufficiency point presently under discussion, we have considered only the evidence and the inferences arising therefrom which support the two jury findings. In reviewing the factual sufficiency points attacking the support for the two jury findings, we have considered all of the evidence. Points six through eleven, inclusive, which in their various forms attack the proof and findings that the defect existed at the time Caterpillar relinquished control of the tractor, are overruled.

Closely connected with the six points just decided is the Appellant's twelfth point which complains of the trial Court's failure to submit its requested issue which was as follows:

Do you find from a preponderance of the evidence that the step in question at the time of its use by the Plaintiff on September 21, 1973, was without substantial change in its condition from the time it was sold?

The point is overruled as the issue would be duplicitous of the first two issues submitted concerning the design defect and causation, and both of which inquired of the deceptive design at the time the tractor was sold by Caterpillar. The controlling issue was submitted and there was no error in failing to submit the requested one. Rule 279, Tex.R.Civ.P.

Points 15 and 16 are legal and factual insufficiency attacks on the evidentiary support for the jury's affirmative answer to special issue No. 2 that the defectively designed step was a producing cause of the occurrence. Producing cause was defined as "an efficient, exciting or contributory cause, which, in a natural sequence, produced the occurrence in question. There can be more than one producing cause." Producing cause or actual cause as opposed to proximate cause is the proper standard in design defect cases. *Rourke v. Garza*, 530 S.W.2d 794, 801 (Tex.1975). Further in line with the definition as given, Gonzales only had to produce proof that the defective design was a producing cause and not that it was the sole producing cause. After viewing the evidence in the required manner, the legal and factual insufficiency of the evidence points on producing cause are overruled.

Point 17 is the "no evidence" attack on the negligence of Caterpillar in designing the step. As previously stated, this point was sustained by this Court in the first appeal and subsequently the Supreme Court reversed this holding and overruled the

point. In this connection, the Supreme Court emphasized the difference between negligence and products liability by pointing out that negligence actions center on the manufacturer's behavior but product liability looks to the product itself. The Court stated the following:

The care taken by the supplier of a product in its preparation, manufacture, or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the act of the manufacturer and determines if it exercised ordinary care in design and production.

571 S.W.2d 867 at 871.

The standard of care of the manufacturer in the negligence field was stated by the Supreme Court as being expressed in Sections 395 and 398 of 2 Restatement of Torts 2d (1965). Having stated that standard, the Supreme Court pointed to the evidence which it held to be more that a scintilla for the jury finding of negligent design. See 571 S.W.2d at 872.

Point 18 presents Caterpillar's insufficient evidence attack on the finding that the step was negligently designed. With the evidence which was discussed in the previous opinions, the Appellee Gonzales stressed two alternative designs in the form of retractable ladders which his expert believed a manufacturer of tractors would have adopted if it had used reasonable care in the adoption of a safe design. Pictures of the expert's suggestions are attached hereto. We have previously discussed the evidence which was introduced which tended to show the impracticability of these designs when applied to the tractor in question and its intended use. Having considered all of the evidence, we sustain Appellant's point 18.

Since liability of Caterpillar can be imposed by the findings to special issues Nos. 1 and 2 on defective design and pro-

ducing cause, we pass to an examination of three points raised by the Defendant regarding its defense of voluntary assumption of risk. The trial Court submitted the defense by its special issue No. 3 which inquired if the Plaintiff "assumed the risk of harm from the defective design" previously inquired about. The issue was followed by an instruction as follows: "One assumes a risk if he knows and appreciates the risk and voluntarily encounters it by means of a free and intelligent choice." Caterpillar submits that Gonzales cannot recover because (1) he voluntarily assumed the risk of harm as a matter of law; or (2) he was in possession of such facts as to be charged with knowledge and appreciation of the danger and that he voluntarily encountered such risk; or (3) that the jury's answer to question No. 3 was against the great weight and preponderance of the evidence. At present, assumption of risk in this State requires (1) subjective knowledge of the facts of the dangerous condition; (2) subjective knowledge of the dangers of the condition; (3) subjective appreciation of the danger of that condition; and (4) voluntary exposure to the danger. The main inquiry is not the knowledge and appreciation of the defect but, rather, it is to the particular danger involved. *Rourke v. Garza*, supra; *Heil Company v. Grant*, 534 S.W.2d 916 (Tex.Civ.App.—Tyler 1976, writ ref'd n.r.e.).

██ Here, Gonzales indicated that he did not expect to fall, nor be injured. Proof of the subjective knowledge is lacking, and the first point is overruled. Of more concern is whether he knew enough facts as to be charged with knowledge and appreciation of the danger. Gonzales was thoroughly familiar with the machine and had climbed on and off it literally thousands of times. He had frequently used it under the same wet weather conditions as he encountered on the day of the accident; he had worked in mud and knew that on those occasions mud collected on the tracks and in the area where the step was located. He was familiar with muddy caliche and knew it was slippery. Yet the fact remains that he never before had slipped nor injured himself.

Gonzales was merely an uneducated laborer. On the other hand, the Caterpillar experts who testified were all highly trained engineers who had extensive experience with the machine under conditions similar to those that existed on the day of the accident. In spite of that, they all indicated that they neither knew nor appreciated any danger from the design of the step or from any condition involving excessive mud on the step. Considering only the evidence and inferences therefrom which support the jury's finding, the second point is overruled, and having considered all the evidence, the third point is overruled.

██ Caterpillar complains of the failure of the trial Court to submit a series of its requested instructions which were to the effect (1) that evidence of a better design was not sufficient to establish that a step was negligently or defectively designed; (2) that the ultimate in safety was not required of a manufacturer; and (3) that the duty of a manufacturer was minimized where the plaintiff was a member of that trade. We find no error in the refusal of the Court to submit the instructions where the standard definition of negligence in terms of a "reasonable and prudent manufacturer" was given and where defective condition and unreasonably dangerous were defined in the manner which had been approved under the consumer expectation test before *Turner v. General Motors Corporation*, 584 S.W.2d 844 (Tex.1979).

██ Caterpillar has a series of evidentiary points, two of which complain that it was refused permission to inquire of the Plaintiff's economist as to whether his estimate of future loss of earning capacity was based on a figure which included federal income and social security taxes. We find no error since the economist gave his answer that his figure did not exclude the federal tax. Regardless, inquiry into the subject was of an immaterial collateral matter as to damages.

The rule made in *Missouri-Kansas-Texas Railroad Company v. McFerrin*, 156 Tex. 69, 291 S.W.2d 931, 945 (1954), was reaffirmed in *Turner v. General Motors Corporation*, supra, at 853.

■ Caterpillar complains that the trial Court erred in permitting evidence by two fellow workers that they had slipped on the same step on the tractor prior to the accident. We find no error as evidence of substantially the same circumstance was introduced and the evidence of prior accidents was proper. 2 McCormick & Ray, Texas Practice, Evidence (2d ed. 1956) sec. 1525.

■ Caterpillar complains of the introduction into evidence of the two drawings of the design alternatives which we have previously discussed. We find no error, and the points are overruled.

■ The jury awarded Gonzales the following items of damages: past medical and hospital care, $2,895.05; future medical and hospital care, $5,000.00; past physical and mental pain, $5,000.00; future physical and mental pain $30,000.00; past loss of earnings, $15,000.00; and future loss of earning capacity, $200,000.00. Only the last award is disputed and it becomes the subject of a series of complaints, the first two of which are legal and factual insufficiency attacks on the supporting evidence for the award. In this connection, we note that Santiago Gonzales at the time of trial was 31 years old, was making $5,600.00 annually at the time of the injury, and had an estimated work life expectancy of 35 years. He was working for Frio County as a heavy equipment operator. As a result of the accident, he sustained a back injury from two ruptured discs and this involved surgery which included removal of the two discs, use of crutches, a cane, a brace and medicine. From the date of injury up to the trial, he could only work as a night watchman, and, in the opinion of his doctor, would only be able to do light sedentary work in the future for which he was untrained. The Plaintiff's expert economist testified that in his opinion Gonzales had suffered a discounted loss of earning capacity in the amount of $218,000.00. Having considered only the evidence and inferences supporting the award, and after considering all of the evidence, we overrule both the legal and factual insufficiency of evidence points.

■ Other points are to the effect the verdict was excessive and that the trial Court abused its discretion in failing to order a remittitur. While the award is large, undoubtedly the jury considered the decreasing value of the dollar. And we also note that from the date of the judgment, the high inflation has forced a substantial and very real reduction in the amount of his recovery. *Halliburton Company v. Olivas*, 517 S.W.2d 349 (Tex.Civ.App.—El Paso 1974, no writ). We overrule all points regarding the amount of the award.

The judgment of the trial Court is affirmed.

[See following illustrations.]

Folding
Steps

this folding step concept
is high, it's a compromise
between getting knocked off,
being simple, however
you can see it,

OSBORN, Justice, dissenting.

I respectfully dissent from that part of the majority opinion on the issue of assumption of risk. In adopting strict liability in *Shamrock Fuel & Oil Sales Co. v. Tunks*, 416 S.W.2d 779 (Tex.1967), the Court recognized voluntary exposure or assumption of risk as a valid defense while abolishing contributory negligence as a defense. Such defense has continued to be recognized in later cases. *Rourke v. Garza*, 530 S.W.2d 794 (Tex.1975); *Henderson v. Ford Motor Company*, 519 S.W.2d 87 (Tex.1974); Sales and Perdue, *The Law of Strict Tort Liability in Texas*, 14 Hous.L.Rev. 1 at 70 (1977). [As to suggestions that assumption of risk be abolished as a complete defense in product liability cases, see: *Wenzel v. Rollins Motor Company*, No. 6814 (Tex.Civ. App.—El Paso, March 5, 1980), and Edgar,

*Products Liability in Texas*, 11 Tex.Tech.L. Rev. 23 at 46 (1979).]

This is a defense which has been considered and applied by the courts of this State for many years, particularly in cases involving premise liability. The leading case during the application of the doctrine in that area of the law was *Houston National Bank v. Adair*, 146 Tex. 387, 207 S.W.2d 374 (1948). In that case, the Bank customer fell on stairs which had been used at "irregular intervals." The Court denied recover and said "the Plaintiff is barred from recovery because Mrs. Adair voluntarily exposed herself to such risks as existed."

Following the holding in the *Adair* case, the Court again denied recovery in *Wesson v. Gillespie*, 382 S.W.2d 921 (Tex.1964), where the plaintiff tripped and fell over the threshold as she exited the 8-Ball Lounge.

The evidence in that case reflected that the bar was rather dark inside, the threshold was about one inch high, and at floor level it was difficult to see. The plaintiff had been over the threshold at least 500 times. In holding that the invitee was charged with knowledge and appreciation of the danger, the Court in an opinion by Justice Greenhill said:

> The condition was static and part of the permanent construction. It was so situated that unquestionably she had stepped on it, or deliberately stopped over it, on most of her departures from the 8-Ball. In any event, while as we said in Triangle Motors that one exposure to a danger may not relieve the owner, there must be some limit to the number of times when a person exposed to a dangerous condition will be charged with knowledge of the condition and knowledge and appreciation of the danger. If it were only a few times, we would have a different problem. But two to five exposures a week for four or five years under the same conditions, in our opinion, must fall within the area of charged knowledge and appreciation. We hold that it does.

In an article entitled "Assumed Risk," 20 Sw.L.J. 1 at 13 (1966), Justice Greenhill delineated how the doctrine had been applied as between static conditions and activities and said:

> Generally speaking, full knowledge and appreciation of the risks involved in a static condition * * * are more easily acquired. * * * One merely needs to observe or be informed of the condition to acquire knowledge and appreciation of the danger involved. On the other hand, it is more difficult to acquire full knowledge and appreciation of risks involving activities.

In our case, the defect was confined to a static condition, i. e., a step attached to the Caterpillar. This is a step which the Plaintiff admitted he had climbed off of some 3,000 times, and many times in the mud. He had operated this Caterpillar for over one and a half years. Each day he operated it, he would get up and down the step many times.

It takes no great legal mind or design engineer to recognize that 3,000 times off the step was substantially greater exposure to the dangerous step than 500 times over the dangerous threshold. It takes no great legal mind or design engineer to recognize that the danger of a step as seen in daylight for one and a half years was more evident than a small threshold on the floor of a dimly lighted bar. It takes no great legal mind or design engineer to recognize that the danger of falling from a step nearly two feet off the ground was greater than that of tripping over a one inch threshold at ground level.

To anyone who ever looked at the step or climbed off the machine, it was obvious that the step was back under the track on the Caterpillar and the operator was required to lean away from the machine in order to reach the step when dismounting. (See item B on the attached picture). If this be a defect, as the jury found, it was one "any fool could plainly see." Greenhill, *Assumption of Risk*, 16 Baylor L.Rev. 111 at 118 (1964). Certainly, the condition of mud on the step would be just as obvious as shown by the testimony quoted in the opinion by the Texas Supreme Court, 571 S.W.2d 867 at 870 and 871 (1978). With regard to the failure to have an adhesive or anti-skid material on the step, it is very clear that this was not the solid surface type of step on which such a material could be placed to avoid slipping. This step was a "U" shaped piece of angle iron with an opening in the middle rather than a solid surface type step. Again, the condition of the step, as well described by Justice Steakley (571 S.W.2d 867 at 869) was one "any fool could plainly see."

Following the reasoning in *Wesson v. Gillespie*, supra, I conclude that the Plaintiff "must fall within the area of charged knowledge and appreciation." I would sustain the Appellant's point of error No. 2. Since the Court has found that there is insufficient evidence to support recovery on a negligence theory, and having concluded that assumption of risk bars recovery on the strict liability theory, I would reverse the judgment of the trial Court.