CATERPILLAR, INC. and B.D.
Holt Company, Petitioners,

v.

Cipriano SHEARS et al., Respondents.

No. 94–1148.

Supreme Court of Texas.

Argued March 23, 1995.

Decided June 29, 1995.

Dissenting Opinion by Justice
Spector Dec. 22, 1995.

Rehearing Overruled Dec. 22, 1995.

Roger W. Hughes, Harlingen, James B. Sales, Roger Townsend, Houston, William Powers, Jr., Austin, Gary Norton, Corpus Christi, for petitioners.

Michael T. Gallagher, David W. Holman, Houston, for respondents.

GONZALEZ, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, HIGHTOWER, HECHT, CORNYN, ENOCH and OWEN, Justices, join.

This is a products liability case. Cipriano Shears, his wife and children sued Caterpillar, Inc. and B.D. Holt Company for personal injuries Shears suffered in a collision of two front-end loaders. The rollover protective structure or "ROPS" for the loader Shears was operating was not installed at the time of the accident. Shears alleged that Caterpillar, the manufacturer of the loader, and B.D. Holt, which sold the loader to Shears' employer, were negligent and strictly liable because the ROPS was designed to be removable, and the defendants did not warn him of the hazards of operating a loader without a ROPS. Based on favorable jury findings, the trial court rendered a judgment for Shears for actual and punitive damages. The court of appeals affirmed the award of actual damages but reversed and rendered a take-nothing judgment as to the punitive damages. 881 S.W.2d 923 (en banc).[1] For the reasons stated herein, we reverse the judgment of

---

1. Two justices dissented from the majority's holding that there was evidence to support an award of actual damages, but they concurred in the judgment eliminating punitive damages. *Id.* at 935 (Kennedy, J., concurring and dissenting, joined by Dorsey, J.). One justice would have affirmed the award of both actual and punitive damages. *Id.* at 939 (G. Hinojosa, J., concurring and dissenting).

the court of appeals and render judgment that Shears take nothing from Caterpillar and B.D. Holt.

## I.

At the time of the accident, Shears was operating a Caterpillar model 920 front-end loader, also called a payloader. It is a four-wheeled, multi-purpose vehicle that is about nineteen feet long and weighs 18,000 pounds. It is used in logging, excavation, construction, mining, material handling, and other industries. The loader has a hydraulic arm in the front which users equip with various devices, typically a bucket for scooping up loose material. Caterpillar manufactured the model 920 with a detachable ROPS as standard equipment. The ROPS on the Caterpillar model 920 is a device with four posts that supports a canopy over and around the driver's seat. Users can remove the ROPS, which weighs 700 pounds, by unbolting twenty-four high-torque bolts and lifting it off with a crane. Removing the ROPS takes twenty or thirty minutes.

In 1979, B.D. Holt, an independent Caterpillar dealer, sold a model 920 front-end loader to Dix Shipping, Inc., which provides stevedore services for the dockyard in Brownsville, Texas. Dix Shipping removed the ROPS in order to use the loaders to unload the cargo of ships with limited clearance between decks. Regulations of the Occupational Safety and Health Administration (OSHA) authorize removing a ROPS for loaders intended for low-clearance use. *See* 29 C.F.R. § 1918.73(b)(5) (1994). Dix Shipping personnel testified that if the ROPS could not have been otherwise removed, they would have cut it off with a cutting torch.

At the time of the accident, Dix Shipping had hired Shears to move sodium sulphate. Following its transport by railroad to the warehouse, workers unloaded the sulphate onto a conveyer belt, which carried the sulfate into the warehouse and dumped it into a pile. Loader operators moved the sulfate to storage piles in other areas of the warehouse, where it was held until it could be loaded onto ships.

Shears and Jesus Sanchez were using Caterpillar model 920 front-end loaders to move the sulphate from the pile near the conveyer belt to the storage piles. Dix Shipping provided safety personnel to direct Shears' and Sanchez' movements and to keep them in different areas of the warehouse, but blowing sulphate dust limited visibility to a few feet. Shortly before quitting time, Shears stopped his loader to dump a load of sulphate. Sanchez' loader struck Shears' loader from behind, pinning Shears between the seat and the console of the loader and severely injuring him. It is undisputed that if the ROPS that Dix Shipping had removed from Shears' loader had been installed, it would have prevented his injuries.

Shears brought this products liability action against Caterpillar and B.D. Holt, alleging negligence and strict liability. Following trial, the jury found that the defendants failed to warn Shears of the danger of operating a loader without its ROPS; Caterpillar's design of a removable ROPS was unreasonably dangerous; and that both defendants were negligent. Consequently, the jury apportioned causation 0% to Shears, 70% to Caterpillar, and 30% to B.D. Holt. It awarded $5,000,000 in damages to Shears, $650,000 to his wife, and $100,000 to each of his two children. The jury also assessed exemplary damages of $4,095,000 against Caterpillar and $1,755,000 against B.D. Holt for gross negligence. The trial court rendered judgment accordingly. The court of appeals affirmed the judgment on the basis of the defendants' breach of the duty to warn and their negligence, and did not reach the design defect theory of liability. 881 S.W.2d at 935.

We first consider the defendants' duty to warn under the theory of strict liability.

## II.

This Court has adopted the theory of strict products liability expressed in section 402A of the Restatement (Second) of Torts. *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787, 788–89 (Tex.1967). The law of products liability does not guarantee that a product will be risk free, since most products have some risk associated with their use. The Restatement imposes liability only for

products sold "in a defective condition *unreasonably* dangerous to the user or consumer." RESTATEMENT (SECOND) OF TORTS § 402A(1) (1965) (emphasis added). A product may be unreasonably dangerous because of a defect in manufacturing, design, or marketing. *See Turner v. General Motors Corp.*, 584 S.W.2d 844, 847 (Tex.1979). A defendant's failure to warn of a product's potential dangers when warnings are required is a type of marketing defect. *See Lucas v. Texas Indus., Inc.*, 696 S.W.2d 372, 377 (Tex.1984). Liability will attach if the lack of adequate warnings or instructions renders an otherwise adequate product unreasonably dangerous. *Id.*

Caterpillar and B.D. Holt contend that they had no duty to warn Shears about operating the loader without its ROPS because the danger, if any, was obvious and therefore a warning would not have prevented the injury. A number of courts have adopted the position that there is no duty to warn of obvious or commonly-known dangers. *See, e.g., Hagans v. Oliver Mach. Co.*, 576 F.2d 97, 102 & n. 5 (5th Cir.1978) (applying Texas law and holding that the manufacturer had no duty to warn of the danger of removing a safety guard from a table saw); *Posey v. Clark Equip. Co.*, 409 F.2d 560, 563–64 (7th Cir.1969); (holding that as a matter of law a manufacturer had no duty to warn of the danger of operating a forklift without an overhead guard); *Davis v. Caterpillar Tractor Co.*, 719 P.2d 324, 327–28 (Colo.Ct.App. 1985) (holding that a product's design is not unreasonably dangerous if its danger is one which anyone would recognize); *Stodghill v. Fiat–Allis Constr. Mach., Inc.*, 163 Ga.App. 811, 295 S.E.2d 183, 185 (1982) (holding that there was no duty to warn of the absence of a protective cage on a bulldozer because it was an obvious risk); *Hunt v. Harley–Davidson Motor Co.*, 147 Ga.App. 44, 248 S.E.2d 15, 16 (1978) (holding that there is no duty to warn of a danger which is obvious or generally known); *Winterrowd v. Travelers Indem. Co.*, 462 So.2d 639, 642 (La.1985) (stating that the duty to warn does not encompass dangers which are obvious to the ordinary user);

*Bavuso v. Caterpillar Indus., Inc.*, 408 Mass. 694, 563 N.E.2d 198, 201 (1990) (concluding there was no duty to warn of the dangers of using a forklift without the overhead guard because the hazard was obvious).

■ Similarly, this Court has recognized that there is no duty to warn when the risks associated with a particular product are matters "within the ordinary knowledge common to the community." *Joseph E. Seagram & Sons, Inc. v. McGuire*, 814 S.W.2d 385, 388 (Tex.1991) (holding that there is no duty to warn of the dangers of excessive or prolonged use of alcohol since these dangers are already so widely recognized). *Seagram's* rationale applies with equal force to products with risks that are obvious to anyone who observes the product. In these circumstances, a warning is not required. Thus, the duty to warn is limited in scope, and applies only to hazards of which the consumer is unaware.

■ A number of courts have observed that a warning that merely states the obvious would accomplish very little and to the contrary may actually be counterproductive. The fact that a risk is readily apparent serves the same function as a warning. *See Hagans*, 576 F.2d at 102 (after noting the "obvious" dangers of a table saw, stating that "a warning of the dangers involved in using the saw would not have informed [the plaintiff] of anything he did not already know"). Warnings about obvious hazards are not likely to reduce the chances of injury. *See Bavuso*, 563 N.E.2d at 201. Moreover, consumers are prone to ignore warnings of obvious dangers, thereby diminishing the importance given by users to warnings about non-obvious hazards. *See General Motors Corp. v. Saenz*, 873 S.W.2d 353, 360–61 (Tex.1993).[2] Thus we hold that the law of products liability does not require a manufacturer or distributer to warn of obvious risks.

The court of appeals did not expressly examine if Caterpillar and B.D. Holt had no duty to warn of obvious risks. However, it

---

2. The tentative draft of the Restatement of Torts (Third) also notes that the very obviousness of an obvious risk conveys the same information as do warnings, and that warning of obvious risks tends to undermine the effectiveness of warnings of unobvious risks. *See* RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 2, at 26–27 (Tentative Draft No. 1, 1994).

concluded that it could not substitute its opinion for that of the jury "about whether the dangers of injury without the ROPS are obvious as a matter of law." 881 S.W.2d at 928. The defendants argue that the court of appeals' analysis conflicts with our holding in *Seagram* that the existence of a duty to warn of a product's dangers is a question of law. *Seagram*, 814 S.W.2d at 387.

▮▮▮ To understand our holding in *Seagram*, two aspects of the opinion are particularly important. First, the inquiry whether a recognition of risk "is within the ordinary knowledge common to the community" is an objective standard. *See id.* at 388. Likewise, we conclude that whether a product has obvious dangers requires an objective standard. *See* RESTATEMENT (SECOND), *supra*, § 402A cmt. i; KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 96, at 686–687 (5th ed. 1984). The determination whether a manufacturer has a duty to warn is made at the time the product leaves the manufacturer. *Saenz*, 873 S.W.2d at 356. Therefore, courts necessarily must make the judgment of whether a product is unreasonably dangerous from an objective viewpoint. *See* KEETON, *supra*, § 96, at 686–87. Shears was experienced with the operation of various kinds of heavy equipment. He testified that, although he had seen machinery equipped with a ROPS, he thought it was to protect the operator from the weather, and had no idea of the risks of operating a front-end loader without a ROPS. However, the testimony of one individual does not control a court's determination of whether a risk is open and obvious as a matter of law under an objective standard. *See Seagram*, 814 S.W.2d at 388 (upholding dismissal of suit for injuries caused by prolonged alcohol use despite pleading of plaintiffs that they were unaware of the risks of prolonged use, because such risk is common knowledge as a matter of law); *accord Satcher v. Honda Motor Co.*, 52 F.3d 1311, 1314–15 (5th Cir. 1995); *Gray v. Manitowoc Co.*, 771 F.2d 866, 871 (5th 1985); *Deere & Co. v. Grose*, 586 So.2d 196, 198 (Ala.1991); *Vincer v. Esther Williams All–Aluminum Swimming Pool Co.*, 69 Wis.2d 326, 230 N.W.2d 794, 798–99 (1975). Therefore, Shears' subjective testimony that he had no idea the lack of a ROPS was unsafe in a collision is not determinative.

▮▮▮ A second important aspect of the *Seagram* opinion is that we decided whether the risk of injury was common knowledge as a matter of law. 814 S.W.2d at 388. (However, we did not foreclose the possibility that in some situations there could be a fact question about whether consumers have common knowledge of risks associated with a product. *See id.* at 388 n. 6.) We were able to decide *Seagram* as a matter of law because the dangers of prolonged and excessive use of alcohol were "so well known to the community as to be beyond dispute." *Id.* at 388. The same can be said in the present case about the dangers of using an 18,000–pound front-end loader without its protective equipment. The inquiry is not whether the average person would know that a ROPS makes a loader safer. Rather, the proper inquiry is whether an average person would recognize that operating an industrial vehicle with open sides and top presents a degree of risk of serious harm to the operator. We believe it beyond dispute that the average person, looking at the open cab of a Caterpillar 920 front-end loader, would understand that nothing stands in the way of an intrusion from the rear or above. As a matter of law, Caterpillar and B.D. Holt did not have the duty to warn of the dangers of operating the loader as an open cab without a ROPS.

### III.

▮▮▮ A number of courts are of the view that obvious risks are not design defects which must be remedied. *See, e.g., Gray*, 771 F.2d at 870 (applying Mississippi law); *Delvaux v. Ford Motor Co.*, 764 F.2d 469, 474 (7th Cir.1985) (applying Wisconsin law); *Young v. Tide Craft, Inc.*, 270 S.C. 453, 242 S.E.2d 671, 680 (1978). However, our Court has held that liability for a design defect may attach even if the defect is apparent. *Turner*, 584 S.W.2d at 850.[3] Determining if a

---

3. The new Restatement of Torts (Third) draft also takes the position that the absence of a duty to warn of an obvious danger does not necessarily mean there is no duty to make the product safer. RESTATEMENT (THIRD), *supra* note 2, § 2, at 27.

design is unreasonably dangerous requires balancing the utility of the product against the risks involved in its use. *Id.* at 847 & n. 1.

Caterpillar designed the model 920 loader for multiple purposes in a wide variety of work environments. The manufacturer designed the loader's ROPS to withstand 37,000 pounds of pressure from above and 14,000 pounds from the side. The ROPS will absorb energy upon impact and bend, protecting the operator. Caterpillar intentionally made the ROPS removable. Thus, if a collision damages the ROPS, it can be removed and replaced with a new one to restore the integrity of the original design.

Caterpillar also designed the ROPS to be removable so that operators could use the loader in low clearance areas. Dix Shipping purchased the model 920 loader in which Shears was injured for that very reason. At the time Dix Shipping purchased the loader, its principal business was unloading ships' cargoes. Unless the ROPS was removed, the company could not use the loader to unload material stored between ship decks. Although OSHA requires the use of a ROPS in most situations, *see* 29 C.F.R. § 1926.1000(b) (1994), it specifically allows use of a loader without a ROPS in certain low-clearance working environments and where there is little risk of a rollover. *Id.* § 1918.73(b)(5).

Shears' expert witness testified that no loader should ever be built unless it has a permanently installed ROPS. The expert's design defect theory was that a loader should be configured so that the ROPS is not removable or so that its removal would render the machine inoperable. Shears presented into evidence a number of designs used by other manufacturers, in which removal of the ROPS also removes the cab and engine controls. He also presented evidence of loader designs in which the ROPS was permanently attached. In response to Caterpillar's claim that buyers needed removable ROPS on loaders to be used in low clearance areas, the expert said that Caterpillar should make models in different sizes for different jobs, so there would be no reason to take off the ROPS of a larger machine to do the work of

a smaller machine. (He offered no suggestions on how users can bear the expense of multiple single-purpose machines, each suited to the height of a single work area). Shears' expert did not testify, and there is no evidence elsewhere in the record, of a safer alternative design for a front-end loader that could fulfill the multi-purpose role of Caterpillar's model 920 with a removable ROPS.

We evaluate whether a product has a design defect in light of the economic and scientific feasibility of safer alternatives. *See Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 746 (Tex.1980). The degree of feasibility is one factor courts weigh in balancing the utility of a product versus its risks. *Turner,* 584 S.W.2d at 846, 849. However, if there are no safer alternatives, a product is not unreasonably dangerous as a matter of law. *See Boatland,* 609 S.W.2d at 748. We agree that "Texas law does not require a manufacturer to destroy the utility of his product in order to make it safe." *Hagans,* 576 F.2d at 101. Because Shears offered no evidence of a safer design for a loader that could perform the same tasks as the Caterpillar model 920, we hold that this product is not defectively designed as a matter of law.

## IV.

Shears also alleged that the defendants were negligent in their design of the front-end loader and in their failure to warn of the loader's dangers. The focus for negligence is on the supplier's standard of care. This perspective differs from that of strict liability, as follows:

> The care taken by the supplier of a product in its preparation, manufacture or sale, is not a consideration in strict liability; this is, however, the ultimate question in a negligence action. Strict liability looks at the product itself and determines if it is defective. Negligence looks at the acts of the manufacturer and determines if it exercised ordinary care in design and production.

*Gonzales v. Caterpillar Tractor Co.,* 571 S.W.2d 867, 871 (Tex.1978). As we discussed above, there is no evidence of a reasonable

alternative design for the Caterpillar model 920 loader. Also, there is no evidence that anyone other than Shears has ever been injured in a collision involving a model 920. There is no evidence that Caterpillar failed to exercise ordinary care in its role as manufacturer.

 Shears attempted to show that B.D. Holt was negligent because (a) one of its salespersons sold the product; (b) the salesperson knew the customer, Dix Shipping, would have to remove the ROPS in order to use it; and (c) he encouraged Dix Shipping to remove the ROPS by offering to buy back the ROPS after the sale. The record shows that Dix Shipping purchased the loader with the intent of using it without its ROPS for unloading cargo on ships with low clearance, a practice authorized by OSHA. There is no evidence that anyone at B.D. Holt was aware of any other intended use. No evidence shows that the company lacked ordinary care in the sale of the model 920 loader.

## V.

A motorcycle could be made safer by adding two additional wheels and a cab, but then it is no longer a motorcycle. A convertible can be made safer by fully enclosing the cab, but then it is just an ordinary car. The law of products liability demands that manufacturers and distributors take feasible steps to make their products reasonably safe. It is not rational, however, to impose liability in such a way as to eliminate whole categories of useful products from the market. If the inherent dangers in a class of products are obvious to a person of ordinary knowledge, there should be no duty to state the obvious. Accordingly, we reverse the judgment of the court of appeals and render judgment that Shears take nothing of Caterpillar, Inc. and B.D. Holt Company.

SPECTOR, Justice, dissenting, joined in Part A by PHILLIPS, Chief Justice.

Justice Spector's dissent of June 29, 1995, is withdrawn, and the following is substituted in its place.

I agree that there is no duty to warn of open and obvious dangers "so well known to the community as to be beyond dispute."

*Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 388 (Tex.1991). I disagree, however, with the majority's holding that the danger in this case was so indisputably obvious that it justified removal of the issue from the jury's province.

### A.

In *Seagram,* this Court cited a litany of Texas cases indicating that as a matter of law the dangers of alcohol consumption are generally known to the community. *Id.* at 388. The Court also cited a comment in the Restatement noting that the dangers of alcoholism are common knowledge. *Id.* at 387–88 n. 4. In addition to these qualifications on its holding, the Court further narrowed its holding by referring to the "judicial notice rule":

> Because Seagram is asking this Court to determine common knowledge as a matter of law, we find the judicial notice rule helpful in providing a standard. Compare 33 S. Goode, O. Wellbourn, III & M. Sharlot, Guide to Texas Rules of Evidence § 201.2 (Tex.Prac.1988) (requiring "high degree of indisputability" as prerequisite to judicial notice) with *Brune v. Brown Forman Corp.,* 758 S.W.2d 827, 830–31 (Tex.App.—Corpus Christi 1988, writ denied) ("common knowledge is information known by the public generally based upon indisputable facts").

Based in part on this rule, we concluded:

> Consequently, we hold that, because the danger of developing the disease of alcoholism from prolonged and excessive consumption of alcoholic beverages is and has been generally known and recognized, it is within the ordinary knowledge common to the community. Therefore, under the *limited circumstances present in this cause,* Seagram had no duty to warn or instruct of this particular danger arising from the prolonged and excessive consumption of alcoholic beverages.

*Id.* (emphasis added). This narrow holding was based on a correspondingly narrow view of "common knowledge." As explained in one decision we relied upon, common knowledge includes only those things "so patently obvious and so well known to the community

generally, that there can be no question or dispute concerning their existence"—for example, that "there are twelve inches in a foot, that the sun rises in the morning, or even that a person drinking alcoholic beverages will become intoxicated." *Brune v. Forman Corp.*, 758 S.W.2d 827, 830–31 (Tex.App.—Corpus Christi 1988, writ denied).

The majority misapplies the *Seagram* standard when it states that the proper inquiry is "whether an average person would recognize that operating an industrial vehicle with open sides and top presents a degree of serious harm to the operator." *Supra* at 383. Under the test delineated in *Seagram*, the jury must resolve this issue. To remove the issue from the jury's province, the Court would have to determine that there has been a showing of a "high degree of indisputability" that the risk was commonly known. This is the test in Texas for open and obvious dangers, and Caterpillar has failed to satisfy it.

Unlike the Court in *Seagram*, the majority cannot cite cases standing for the proposition that the danger associated with the absence of "ROPS" on the vehicle was so commonly known and "highly indisputable" that the Court can take judicial notice that the absence of the safety device posed an open and obvious risk of harm. To the contrary, a number of courts have held that the question of whether the absence of "ROPS" is open and obvious is a fact question for the jury. *See, e.g., Young v. Deere & Co.*, 818 F.Supp. 1420, 1423 (D.Kan.1992); *Gann v. International Harvester Co.*, 712 S.W.2d 100, 106 (Tenn.1986); *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1283 (Wyo.1983).

The danger associated with operating a Caterpillar 920 front-end loader without its safety guards is certainly not common knowledge. Photocopies of photographs in the record do not give rise to the "high degree of indisputability" that would justify what is akin to judicial notice of the obviousness of the danger. *Cf., Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 592 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) (rejecting argument that the dangers of shifting a car into "park" while stationary were open and obvious). An ordinary person looking at a large industrial front-end loader without "ROPS"

might well assume that it could withstand a workplace collision without inflicting catastrophic injury.

Moreover, even if the risk of operating the 920 without ROPS was obvious, the protection that the ROPS would have afforded Shears certainly was not. There is no duty to warn of an obvious risk only because that warning would convey no additional information; the user is presumed to already know of the risk. *See* KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 96, at 686 (5th ed. 1984). If the benefit of a safety device is not obvious, however, then a warning that the device should not be removed does convey important information. In the present case, the protective function of the ROPS cannot be said to be indisputably obvious. Shears, who had previously used the 920, testified that he thought that the "ROPS" was more like a "cabin ... to protect us from the heat, the cold." Caterpillar's own brochures expressly state that one of the functions of the ROPS is to provide a comfortable environment for the operator.

## B.

The majority's extension of our holding in *Seagram* essentially resurrects assumption of the risk as an absolute bar to recovery in strict liability and negligence actions, despite the fact that Texas has adopted a system of comparative apportionment. *See* TEX.CIV. PRAC. & REM.CODE § 33.001; *Brune*, 758 S.W.2d at 829 n. 1. The traditional assumption of the risk defense requires "a voluntary encounter with the danger or risk—which means by free and intelligent choice." *Henderson v. Ford Motor Co.*, 519 S.W.2d 87, 91 (Tex.1975).

What is most egregious in this case is that the majority imposes this doctrine on the injured worker while disregarding the requirement that he be subjectively aware of, and voluntarily encounter, the risk. Shears was required to use the 920 to perform his duties; he had no discretion or volition. In the present case, Shears testified that he did not know that the "ROPS" was there to protect him from injury; thus, he certainly did not understand the dire consequences resulting from the operation of the loader

without a "ROPS." Shears thought that the "ROPS" existed primarily for the comfort of the operators. Shears' lack of appreciation of the risk is also reasonable since both Caterpillar and his employer admitted that they did not tell, warn, instruct, inform, or train anyone about the nature of the "ROPS," the dangers of "ROPS" removal, or the dangers of operation of the loader without a "ROPS" attached.

Most of our sister states that have considered the open and obvious danger rule have chosen not to follow the majority's approach. The Tennessee Supreme Court has held that the obviousness of the defect is only one factor to be considered when determining whether a defect is unreasonably dangerous. *See Gann,* 712 S.W.2d at 106. The court held that to hold otherwise would establish the assumption of the risk defense without any showing that the plaintiff discovered the defect, understood the danger presented, and then disregarded the danger voluntarily. *Id.* at 105. In *Gann,* the court rejected an argument similar to the one that Caterpillar makes in this case—that defect claims on a tractor could not be sustained because the dangers of operating a tractor without "ROPS" were obvious. *Id.* at 106.

The Alabama Supreme Court recently applied similar reasoning in a products liability case against Bic for its failure to child-proof lighters:

> Whether a danger [is] 'open' and 'obvious' does not go to the [legal] issue of the duty of the defendant under the [applicable products statute]. Instead, 'open' and 'obvious' danger relates to the affirmative defense of assumption of the risk, the alleged 'defectiveness' of the product, and the issue of causation.... Therefore, a summary judgment based upon the danger's being open and obvious would be improper, as such a determination is a factual issue for the jury.

*Bean v. BIC Corp.,* 597 So.2d 1350, 1353 (Ala.1992); *see also Young v. Deere & Co.,* 818 F.Supp. at 1423 ("Whether defendant had a duty to warn plaintiff and whether the absence of the ROPS equipment is a patent, open, and obvious risk are questions of fact for the jury.").

A Wisconsin court recently explained the incompatibility of the majority's approach with comparative responsibility systems:

> Some states that have adopted comparative negligence statutes have addressed the issue of the proper application of the open and obvious danger doctrine to ordinary negligence cases and have essentially abolished its use to preclude recovery based on a lack of duty.... These cases conclude that the application of the doctrine to preclude recovery because the defendant owes no duty to a plaintiff who confronts an open and obvious danger is merely a corollary to the assumption of the risk doctrine, which is abolished in most comparative negligence states.

*Hertelendy v. Agway Ins. Co.,* 177 Wis.2d 329, 501 N.W.2d 903, 907–08 (1993). Other authorities agree that the majority's approach is unfair and damaging to the integrity of our tort system. *See* Keeton, *Products Liability–Inadequacy of Information,* 48 TEX.L.REV. 398, 400 (1970); Marschall, *An Obvious Wrong Does Not Make a Right: Manufacturers' Liability for Patently Dangerous Products,* 48 N.Y.U.L.REV. 1065 (1973) (arguing that the patent danger rule is economically inefficient).

For the foregoing reasons, I would not extend *Seagram* to the facts of this case. I would uphold the jury's determination that Caterpillar's failure to warn was negligent and constituted a marketing defect. Accordingly, I respectfully dissent.